## THE D. C. MURRAY.[1]

### (District Court, D. California. January 18, 1886.)

SHIPPING—CARRIAGE OF PASSENGERS—ACCOMMODATIONS.

Passengers on a sailing vessel testified that the food was of bad quality and the water brackish. A few other cabin and some steerage passengers stated that the food was "excellent," as did also the captain's wife. The latter testimony was contradicted by a witness who stated that during the voyage the captain's wife had said she would die if she did not get better food, and spoke of growing thin because of it, and that other witnesses for the claimant had frequently complained of the food. Complaints were made during the entire voyage, and all the cabin passengers left the boat at an intermediate port, but there was no survey then called on her remaining stores. There was evidence that most of the beef and pork was bad and the other stores inferior. The rice sometimes had weevils in it. *Held,* that this was sufficient, in the absence of a survey, to show that the food was unsuitable, in view of the payment of $125 for passage when first-class passage by steamer was only $200.

Charles Page, for libelants.
C. K. Bonestell, for claimants.

HOFFMAN, J. I have found it impossible to arrive at any certain conclusion as to the details of the grievances complained of by the passengers. The testimony is conflicting, not only as to the general quality of the food and water furnished to the passengers, but also on points as to which it is difficult to believe that an honest mistake has occurred. A notable instance of this is found in the conflicting statements of Mrs. Harrington and her daughters, and those of Mrs. Hesketh. The former testify that the food was excellent, and that they never complained of it. Mrs. Hesketh, who is a lady of some 70 years, says that the elder Miss Harrington used to complain to her that the food was very bad, except the clam soup. Mrs. Hesketh also testifies that Mrs. Berry (the captain's wife) frequently said she should die if she could not get better food, and spoke of growing thin in consequence of its bad quality. Mrs. Berry denies this emphatically, and maintains that the provisions were of excellent quality. If her statement be accepted as accurate, the passengers had no ground whatever for complaint. And yet that complaints were made constantly throughout the entire voyage appears from the testimony of Capt. Berry himself. One fact is clear. All the cabin passengers left the vessel at Honolulu; some of them even taking steerage passages in the steamer from that port. Their disgust with the ship does not seem to have been wholly caused by the bad quality of the water and provisions. A most unpleasant feeling appears to have grown up between the master and his wife, and all the passengers except Mrs. Hesketh. Evidence of that feeling is abundant in the testimony.

The master seems to have been of a taciturn and morose disposition,

[1] This case has been heretofore reported in 11 Sawy. 416, and is now published in this series, so as to include therein all circuit and district court cases elsewhere reported which have been inadvertently omitted from the Federal Reporter.

was frequently guilty of rudeness, and occasionally indulged in threats and profanity. How far his conduct may be excused on the ground of exasperation at the incessant and open expressions by the passengers of dissatisfaction and a disgust with their food depends upon how far those expressions were justified by its quality. I am inclined to think that the beef and pork were, for the most part, bad, the water dirty and brackish; but for how much of the time I have been unable to ascertain with certainty. That the rice had weevils in it occasionally cannot be doubted; but how often it is difficult to discover. Other articles of food, such as tripe, canned meats, the bread, oatmeal, etc., are condemned by the passengers in unmeasured terms. They are declared by the claimant's witnesses to have been very good. Both statements are probably exaggerated. It would be endless to examine the testimony in detail with respect to every article of food supplied to the passengers. The provisions which the steerage passengers called by the claimants pronounce "excellent" and "splendid" are in many instances spoken of by the cabin passengers as putrid, rotten, and offensive. In some cases the complaints of the latter seem frivolous or unfounded,—as, for example, the importance they seem desirous of attaching to the circumstance that a pig which had been slaughtered became tainted before it could be used, the vessel being at the time in the tropics; or Mrs. Hesketh's condemnation of the tea as "bad," because it was "too strong," and she had to dilute it with water before she could use it. But, on the whole, I am of opinion that the food of the passengers was in general of a very inferior quality, and by no means such as they were entitled to expect, when it is considered that they paid for their passage $125 each, when the fare for a first-class passage by steamer from this port to Sydney is only $200.

If, in reaching this conclusion, I err by giving too much credence to the statements, possibly exaggerated, of the libelants, the claimants have themselves chiefly to blame. It would have been easy on the vessel's arrival to have called a survey upon her remaining stores. Her precise condition and quality of the beef, ham, pork, flour, rice, oatmeal, etc., could have been unmistakably ascertained. I shall decree to Mr. Haley $300 for himself and family; the sum of $100 to each of the other libelants.